564 A.2d 526

**Richard KLUSMAN on behalf of himself and all others similarly situated and William Van Horn, on behalf of himself and all others similar situated, Petitioners,**

**v.**

**BUCKS COUNTY COURT OF COMMON PLEAS and H. Paul Kester, Court Administrator, Respondents.**

Commonwealth Court of Pennsylvania.

Heard June 7, 1989.

Decided Sept. 7, 1989.

618

Neil A. Morris, I. David Pincus, Christopher D. Mannix, Sidkoff, Pincus & Green, P.C., Philadelphia, for petitioners.

Howland W. Abramson, Charles W. Johns, Administrative Office of Pa. Courts, Philadelphia, Peter A. Glascott, Asst. County Sol., Michael Klimpl, Doylestown, for respondents.

NARICK, Senior Judge.

On October 31, 1984, Richard Klusman (Klusman) and William Van Horn (Van Horn)[1] (collectively, Petitioners) filed a class action complaint[2] against the Bucks County Court of Common Pleas (Bucks County Court) and H. Paul Kester (Kester), Court Administrator of Bucks County Court (collectively, Respondents), pursuant to this Court's original jurisdiction.[3] The Petitioners seek to represent a class composed of all parties who filed civil actions before a district justice in Bucks County from January 1, 1981

1. On June 7, 1989, Van Horn withdrew as a named-Petitioner for health reasons and therefore, will not be considered representative of the putative class.

2. We will treat the complaint filed pursuant to Pa.R.C.P. No. 1703 as a petition for review before this Court.

3. 42 Pa.C.S. § 761(a)(1).

through December 31, 1988. For the reasons set forth below, we deny the Petitioners' motion to certify the class.

## PROCEDURAL BACKGROUND

The action, which seeks declaratory and injunctive relief, alleges that Respondents imposed charges, in the nature of postage costs, for mailings through the Bucks County Minor Judiciary, in civil cases, which were allegedly in excess of the charges permitted by law.[4] This alleged overcharge, effective January 1, 1981, was based upon the mandate of Memorandum Order 80–52 that all district courts in Bucks County, Minor Judiciary, require a party filing a civil claim to pay a $6.00 postage charge for service to each party sued, $3.00 for a counterclaim, except for those proceeding *in forma pauperis.*[5] Klusman asserts his standing as a class representative based upon a November 2, 1983 counterclaim he filed with a district justice in Bucks County, where he paid the now-contested postage fee of $3.00.

Before an amended complaint was filed, the parties stipulated to join as Petitioners, Soloman Bronstein (Bronstein) and Marian Sherman (Sherman), t/a Doral Garden Associates and as a Respondent, the County of Bucks. On May 31, 1985, the pleadings closed.

On August 12, 1985, Petitioners moved for an extension of time in which to move for class certification, outside the time set forth in Pa.R.C.P. No. 1707(a).[6] The Court granted

---

**4.** 42 Pa.C.S. § 1725.1(a) establishes the fees and charges to be imposed by the minor judiciary in civil cases. The statute states: Said costs shall not include, however, the cost of postage and registered mail . . . ."

**5.** The Office of the Administrator of Bucks County Court, in conjunction with the Bucks County Court, issued Memorandum Order 80–52, effective January 1, 1981. The $6.00 postage charge had been determined to be the average cost per filing for the mailing of not only the original complaint, but of continuances, judgment and other notices. Memorandum Order 80–52 was repealed effective January 1, 1989, by Memorandum Order 88–86, and now actual postage expenses are solely collected by the Administrator.

**6.** Pa.R.C.P. No. 1707(a) states: "Within thirty (30) days after the pleadings are closed or within thirty (30) days after the last required pleading was due, the plaintiff shall move that the action be certified

Petitioners' motion and *ordered Petitioners to move for class certification within 45 days after completion of discovery.*

Petitioners moved for summary judgment, which this Court denied,[7] and on October 13, 1987, we issued a rule upon Petitioners to show cause why the action should not be dismissed for want of prosecution. Such rule was discharged and on May 31, 1988, Petitioners filed the following status report:

1. On May 13, 1988, [Petitioners] received Answers to Petitioners' Interrogatories (Second Set) from [Respondent] County of Bucks.[8]

2. [Petitioners] may be filing a Suggestion of Death for [Petitioner] Solomon Bronstein who *recently* passed away. [Petitioners'] counsel is contacting Mr. Bronstein's Estate.[9]

3. [Petitioners] intend to file a Motion for Summary Judgment in the near future. (Emphasis added.)

On August 23, 1988 and October 31, 1988, Petitioners filed status reports identical to the May 31, 1988 report. On three occasions, Petitioners failed to comply with court ordered deadlines for filing and risked dismissal of their action.

Eventually, on March 28, 1989, Petitioners Klusman, Van Horn, the Estate, and Sherman filed their motion for class certification, which matter is presently before us. Each submitted an affidavit in support of the Motion for Class

as a class action. The court may extend the time for cause shown. If the plaintiff fails to move for certification, the court if so notified shall promptly set a date for a certification hearing."

7. *Klusman v. Bucks County Court of Common Pleas,* 104 Pa.Commonwealth Ct. 437, 522 A.2d 154 (1987) (*Klusman I.*).

8. May 13, 1988 is the date discovery closed.

9. Mr. Bronstein died June 27, 1987. Sherman is the daughter of the deceased, Bronstein. Bronstein was a 90% shareholder of Doral Garden Associates and Bensalem Garden Association; Sherman held the remaining 10%. Both associations were dissolved upon Bronstein's death and his Estate (Estate) is pursuing his interest in the claim.

Certification.[10]   At the June 7, 1989 certification hearing, the parties presented testimony and introduced various documents into evidence.   Upon the entire record in this case and based on the credible evidence, the Court makes the following:

## FINDINGS OF FACT

1.   The contingent fee agreement, admitted over Petitioners' counsel's objection at the June 7, 1989 certification hearing, signed by Bronstein, before his death, and Sherman, stated that if no recovery were obtained, they would *not* be responsible "for payment of *any* fees, costs, or expenses to Neil A. Morris or Sidkoff, Pincus & Green, P.C." (Emphasis in original.)

2.   The contingent fee agreement, Klusman admitted signing, stated that if no recovery were obtained, he would *not* be responsible "for payment of any fees, costs, or expenses to Neil A. Morris or Sidkoff, Pincus & Green, P.C."

3.   The Estate's affidavit, states that "Petitioner's counsel, Sidkoff, Pincus & Green, P.C., has agreed to advance all costs necessary to prosecute this case to its final conclusion. The Estate understands that as a named Petitioner in this action, it remains ultimately liable for the costs."

4.   The other named-Petitioners' affidavits each contain a similar paragraph stating that they remain ultimately liable for costs.

5.   The contingent fee agreements signed by Petitioners are contradictory and inconsistent to statements made in their sworn affidavits.

6.   The Estate's recovery may exceed a thousand dollars but, the Estate has no knowledge as to the potential cost to the Estate.

10.   Carl F. Werley (Werley), a vice-president of Provident National Bank, is the administrative officer assigned to the Estate.   The Estate's affidavit was signed by Werley and two other co-executors, Marvin Comisky and Gerald I. Wolpe.

7. The Estate does not demonstrate that it would adequately represent the absent class members.

8. Sherman's testimony lacks credibility and she would not adequately represent the absent class members.[11]

9. Klusman's maximum potential recovery is only $.55, since Memorandum Order 80–52 ordered a $3.00 postage charge for counterclaims and the actual registered mail cost at the time of Klusman's filing was $2.45, thus leaving a balance of $.55.

10. The cost of preparing and issuing over 100,000 checks would be a burden upon the judicial and administrative staffs of Bucks County.[12]

11. For each of the 108,107 claims, it would take "fifteen minutes to pull the file[ ], examine, record the data, return

11. On cross examination Sherman testified as follows:
Q. When did you become aware that these charges might be overcharged in postal charges?
A. Other than hearing conversation heretofore, you know, previously with my father, I really became aware of it all about a month ago that there was litigation pending.
Q. In 1989?
A. Yes.
Q. Did you sign the original Complaint in this matter?
A. Yes.
Q. I may have misunderstood you. I thought I heard you say you became aware of this suit a month ago?
A. I signed—obviously I signed that, and I knew about it before, so if I said a month ago—whenever the appropriate time is, is when I did it.
Q. Well, if I say to you this was filed approximately five years ago, were you aware five years ago of the procedure?
A. Well, there were many times I was given papers to sign by my father, who really handled all those, and I signed it. I did sign it, and we discussed it as we talked about the overcharge five years ago. So that is what I can say to that matter.

12. Respondents argue that the party who allegedly was overcharged could have requested a refund of advanced unexpended postage costs to the district justice, who had the discretion to return such unexpended funds. Respondents additionally argue that the party also could include the issue of excessive postage costs in an appeal on the merits taken to the Court of Common Pleas of Bucks County. These arguments go to the merits and are not properly before us. Explanatory Note to Pa.R.C.P. 1707.

the file[ ] and have the materials prepared for data entry ... [totalling] thirteen years of man-hours' effort." [13]

12. It costs approximately ten dollars to process and issue one check.

## DISCUSSION

In determining whether or not to certify a class, we must consider all relevant testimony, depositions, admissions and other evidence. Pa.R.C.P. No. 1707. The purpose of class action certification is to decide who the parties to the action should be without considering the merits of the claim. Explanatory Note to Pa.R.C.P. No. 1707.

Pa.R.C.P. No. 1702 sets forth specifically the prerequisites to a class action as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of and controversy under the criteria set forth in Rule 1708.

Petitioners have the burden of proving the prerequisites of Pa.R.C.P. No. 1702. *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). Once the class action allegations are well-pleaded, as we find here, the class proponent must present facts from which the court can conclude the certifi-

13. Notes of Testimony (N.T.) June 7, 1989 certification hearing at 214–215.

cation prerequisites are met. *Janicik v. Prudential Insurance Co. of America*, 305 Pa.Superior Ct. 120, 451 A.2d 451 (1982).

█ Pa.R.C.P. No. 1702(1) requires a class to be so numerous that joinder of all members would be impracticable. Kester testified that from January 1, 1981 through December 31, 1988, there were 108,107 civil cases filed before district justices in Bucks County. Whether a number is so large as to make joinder impossible is not dependent upon an arbitrary limit. 3B Moore's *Federal Practice*, ¶ 23.05[3] (2d Ed.1987). The class representative need only define the class "with some precision" so as to afford the court with "sufficient indicia that more members exist than it would be practicable to join." *Janicik*, 305 Pa.Superior Ct. at 132, 451 A.2d at 456 (*citing Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir.1981)).[14]

A well-pleaded class action allegation, such as numerosity, if admitted by the opponent, as is the case here, may be considered as evidence at the class certification hearing.[15] Once a prima facie showing is made, the burden shifts to the opponent to come forward with contrary evidence, and absent such, would satisfy the class proponent's burden. *Janicik*. Since Respondents do not refute numerosity, Petitioners meet the prerequisite of Pa.R.C.P. No. 1702(1).

█ Pa.R.C.P. No. 1702(2) requires the class action proponent to present questions of law or fact common to the class. Common questions generally exist if the "legal grievances arise out of same practice or course of conduct on the part of the class proponent." *Janicik*, 305 Pa.Superior Ct. at 133, 451 A.2d at 457 (*citing Ablin, Inc. v. Bell Telephone Co. of Pennsylvania*, 291 Pa.Superior Ct. 40,

**14.** "Federal precedent is instructive in interpreting Pennsylvania class action rules" since many of these provisions have been taken virtually verbatim from the federal rules. *Janicik*, 305 Pa.Superior Ct. at 127, n. 3, 451 A.2d at 454 n. 3 (*citing McMonagle v. Allstate Insurance Co.*, 460 Pa. 159, 167, 331 A.2d 467, 471–72 (1975)); Explanatory Note to Pa.R.C.P. No. 1701.

**15.** Pa.R.C.P. No. 1706 states that "[i]n all actions the averments of fact under Class Action Allegations shall be deemed admitted unless denied in conformity with Rule 1029."

435 A.2d 208 (1981)). Respondents admit in their Amended Answer and New Matter that Memorandum Order 80–52 set a flat postage rate of $6.00. Therefore, Petitioners meet the requirement of Pa.R.C.P. No. 1702(2).

Petitioners must also show that their claims and/or defenses are typical of those of the proposed class according to Pa.R.C.P. No. 1702(3), which is a verbatim copy of F.R.C.P. 23(a)(3).

In *Hedges Enterprises, Inc. v. Continental Group Inc.*, 81 F.R.D. 461 (E.D.Pa.1979), the federal district court outlined the points of analysis of Pa.R.C.P. No. 1702(3)'s comparable rule.

> As with the requirement of Rule 23(a)(2), [1702(2)] the representative plaintiff's claims must be similar enough to permit the Court to conclude that the representative party will adequately represent the interests of the class and that there are no antagonistic or adverse interests between the representative plaintiff and the proposed class [citations omitted]
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> While it is generally recognized that the typicality requirement of Rule 23(a)(3) [1703(3)] and the adequacy requirement of Rule 23(a)(4) [1702(4)] 'represent a two-pronged approach intended to insure that the claims of the class members are fully presented and vigorously prosecuted' and that 'the typicality requirement functions as a safeguard against inter-class conflicts and an assurance that the plaintiff's interests are more or less co-extensive with those of the class' [citations omitted], it is also generally recognized that 'the mere fact that a representative plaintiff stands in a different factual posture is not sufficient to refuse certification ... [t]he atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy.' [Citations omitted.]

*Id.* at 465–66.

Petitioners assert that the only differences in the claims among class members is the calculation of damages which

will not destroy typicality. *ABC Sewer Cleaning Co. v. Bell of Pennsylvania*, 293 Pa.Superior Ct. 219, 438 A.2d 616 (1981). As we will more fully discuss in our analysis of Pa.R.C.P. No. 1702(4), we do not believe that the named-Petitioners adequately represent the putative class and therefore, the Petitioners do not meet "the two-prong approach intended to insure that the claims of the class members are fully presented and vigorously prosecuted." *Hedges*, 81 F.R.D. at 466.

■ In determining whether the representative parties will fairly and adequately assert and protect the interests of the class as set forth in Pa.R.C.P. No. 1702(4) we consider (1) whether counsel for the representative parties will adequately protect the class' interest; (2) whether the representative parties have a conflict of interest in the maintenance of the action; (3) whether the representative parties have or can acquire financial resources to adequately prosecute the claim; and (4) "other matters." Pa.R.C.P. No. 1709; *Janicik*, 305 Pa.Superior Ct. at 135, 451 A.2d at 458.

■ As to counsel's adequacy to protect the class, in the motion for certification and brief in support thereof, Petitioners' counsel sets forth his experience and successes, and that of his firm, in litigating class actions. Although we are most impressed with the detail and completeness of Petitioners' counsels' motion, briefs and arguments filed · during 1989, such belated efforts do not explain counsels' action, or inaction, for the five previous years.

First, Petitioners failed to move promptly for class certification. The motion for an extension of time in which to move for certification was filed after the thirty day period from the close of the pleadings. Pa.R.C.P. No. 1707(a).[16] This Court granted the extension and *ordered Petitioners to move for certification within 45 days after the close of*

16. Petitioners cite *Rauch v. United Instruments, Inc.*, 368 Pa.Superior Ct. 294, 533 A.2d 1382 (1987), that interpreted Pa.R.C.P. No. 1707(a) to place an equal burden upon Respondents to notify the Court to set a date for the certification hearing. We agree and note that Petitioners' failure to move for certification alone does not obligate us to deny certification, but is merely a factor in our ultimate determination.

*discovery.* Discovery closed May 13, 1988. On March 29, 1989, almost ten months later, Petitioners filed for certification.[17]

Petitioners' counsel represented to this Court, in three identical status reports dated May 31, 1988, August 23, 1988 and October 31, 1989, that Bronstein had "recently" died and that counsel was contacting the Estate's counsel. As late as February 16, 1989, Petitioners' counsel represented to this Court that Mr. Bronstein had "recently" died when, in fact, Mr. Bronstein died June 25, 1987.

Petitioners also were threatened with dismissal on three occasions for failing to adhere to court orders. Such delays alone are sufficient to deny class certification. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

Petitioners' counsel also inappropriately moved for summary judgment, *Klusman I,* in the face of a clear prohibition against granting such relief in favor of a class until the Court has ruled on the issue of certification. Pa.R.C.P. No. 1715(a). The explanatory note to Rule 1715 describes this provision as "self evident," in the absence of a special order of the court which Petitioners did not seek.

Lastly, the fee agreements between counsel and named-Petitioners provided that in no recovery was procured, named-Petitioners would not be responsible for "any fees, costs or expenses." Moreover, Petitioners counsel admitted that his firm "will be responsible for the costs and expenses, win or lose." (N.T. 136). Such an agreement is contrary to Canon 5 of the Code of Professional Responsibility.[18] Ethical Consideration 5-8 provided that "the ad-

17. Although this case was not assigned to a judge upon filing of the complaint, Pa.R.C.P. No. 1703(b), it is obvious that the Court adequately supervised the proceedings and was not the cause of any inaction by Petitioners' counsel.

18. On April 1, 1988 the Rules of Professional Conduct superseded the Code of Professional Conduct. Rule 1.8(e)(1) would now appear to sanction the fee agreement used in this case. However, the Supreme Court's order of October 6, 1987, adopting and promulgating the new Rules, specifically mandated that misconduct occurring on or before

vancing or guaranteeing of payment of the costs and expenses of litigation by a lawyer may be the only way a client can enforce his cause of action, but the ultimate liability for such costs and expenses must be that of the client." Unethical conduct by petitioners' counsel in similar cases has resulted in denial of class certification.[19] *See Stavrides v. Mellon National Bank and Trust Co.*, 60 F.R.D. 634 (W.D.Pa.1973); *Wagner v. Lehman Brothers Kuhn Loeb, Inc.*, 646 F.Supp. 643 (N.D.Ill.1986).

■ Additionally, named-Petitioners have the burden to show that they represent the interests of the purported class. *Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Deckert*, 123 F.2d 979 (3d Cir.1941); *Klemow.* In order for a party to adequately represent a class, his interest must be wholly compatible with those he wishes to represent. 3B Moore's Federal Practice, ¶ 23.07[3].

Primarily, Petitioners' fee agreement, which excused them from liability for fees, costs or expenses if they lose, implies that because they have "nothing to lose" that they will not adequately pursue the litigation.[20] "[C]ourts in class certification proceedings regularly and properly employ reasonable inferences, presumptions and judicial notice." *Janicik*, 305 Pa.Superior Ct. at 128, 451 A.2d at 455 (citations omitted). If the client is not financially respon-

March 31, 1988 would be governed by the Code of Professional Conduct. Canon 5, Disciplinary Rule 5–103(b) provided:

While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, *provided the client remains ultimately liable for such expenses* (emphasis added).

**19.** This opinion should be interpreted in no way, whatsoever, as a finding by the Court of unethical conduct on the part of any counsel who is or has been involved in this action.

**20.** In *Janicik*, the Court found that although counsel initially funded the suit, the named-plaintiff adequately represented the class since the ultimate financial burden was upon him. This is not the situation before us.

sible, the attorneys have a free rein over the prosecution of the action which is tantamount to the unacceptable situation of the attorney being a member of the class of litigants while serving as class counsel. *Golub v. Mid-Atlantic Toyota Distributors, Inc.*, 516 F.Supp. 1287 (D.C.Md.1981). *See also Klein v. Miller*, 82 F.R.D. 6 (N.D.Tex.1978).

Petitioners never demonstrated concern as to their counsel's failure to comply with court ordered deadlines or an improperly filed motion for summary judgment.

Mrs. Sherman's testimony while testifying that she knew nothing about the litigation until one month prior to the class certification hearing is suspect and lacks credibility.

Mr. Werley testified that he did not know of the potential costs to the Estate. Although lack of knowledge on the part of a named-Petitioner is not fatal to certification,[21] this infers the Estate may not adequately represent the class.

Klusman's testimony as to his commitment to the class and to the importance of pursuing the injunctive relief, despite his maximum recovery of $.55 demonstrates a desire to adequately represent the class. The fee agreement, however, undermines Klusman's testimony of commitment to the class.[22]

The contingent fee agreements which Petitioners entered into with counsel are in contradiction to the declarations set forth in their affidavits submitted under oath to this Court, to the effect that Petitioners would bear ultimate responsibility for the repayment of costs "win or lose." We find that these Petitioners have abdicated the financial and fiduciary responsibility they are required to maintain by *Golub*. This abdication will lead to the unacceptable situa-

21. *In re Goldchip Funding Co.*, 61 F.R.D. 592 (M.D.Pa.1974).

22. Respondents also argue that since Klusman filed his counterclaim on November 2, 1983 and did not file the class action until October 31, 1984, that he is barred by 42 Pa.C.S. § 5522, that requires that anyone who intends to file an action against a governmental unit or agent give notice within six months from the date of the alleged offense. The implication of Klusman being time-barred and therefore, not a proper representative, has no effect on the class since Van Horn timely filed. *Miller v. Federal Kemper Insurance Co.*, 352 Pa.Superior Ct. 581, 508 A.2d 1222 (1986).

tion of counsel becoming a member of the class. We also find, based upon the testimony of the Petitioners, that they will not adequately represent the class. This failure to adequately represent the class erodes Petitioners' argument that their claims are typical of the class and thus, Petitioners also fail in meeting the prerequisite of Pa.R.C.P. No. 1702(3). The same fiduciary obligations apply as well to counsel seeking to represent the class.[23]

Lastly, Pa.R.C.P. No. 1702(5) states that Petitioners may sue as representative parties on behalf of a class only if a "class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708." [24]

**23.** The importance of the attorneys' fiduciary duties to the absent class is emphasized by the concern expressed in *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir.1973), wherein the court states: "Experience teaches that it is counsel for the class representatives, and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary is sophistry."

**24.** Pa.R.C.P. No. 1708 sets forth that:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider

\* \* \* \* \* \*

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

\* \* \* \* \* \*

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

(b) Where equitable or declaratory relief alone is sought, the court shall consider

(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b).

Petitioners assert that a class action is a fair and efficient method of adjudication. Respondents disagree stating that the size of the class, the difficulties likely to be encountered in managing the class action, and the small amount of potential recovery for each member defeat the purpose of the class action. In determining fairness and efficiency, we must balance the interests of the litigants, present and absent, and the court system. *Janicik.* Although Petitioners have offered their assistance in determining the amount due members of the class (who would respond to their notice, most likely in the form of publications) and of distributing the funds, it still would be necessary for some agency, either administrative or judicial, to oversee this distribution, after conducting some sort of mini-trial on the damage issue. Where the issue of damages does not lend itself to a mechanical calculation, but requires separate mini-trials of a large number of individual claims, courts have found that the staggering problem of logistics make the damage aspect of the case predominate and renders the class unmanageable as a class action. *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309 (5th Cir.1978). A class is unmanageable when damages cannot be determined by "mathematical or formula computations." *Id.* at 326. *See, e.g., Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir.1977), *cert. denied* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Ralston v. Volkswagenwerk A.G.,* 61 F.R.D. 427 (W.D.Mo.1973); *Boshes v. General Motors Corporation,* 59 F.R.D. 589 (N.D.Ill.1973).

In this case, the Court would be required to consider and identify the persons, whether they in fact suffered actual monetary loss and then, determine the exact amount of such loss.

Petitioners argue, relying on *Kelly v. County of Allegheny,* 519 Pa. 213, 546 A.2d 608 (1988), that the class claims are sufficiently large in the aggregate when weighed against the expected costs and expenses of prosecuting this

case, and that the expense of notice can be worked out in an economical manner as permitted by Pa.R.C.P. No. 1712.[25]

We do not agree. To verify that each of the 108,107 claims suffered actual damages, would present an administrative nightmare because of the overwhelming number of transactions between parties that would be required to be examined. *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506 (E.D.Mich.1982). Petitioners argue these determinations go to the merits. This evaluation of the question of manageability, though ultimately involved with the merits, must be examined in order to determine the efficiency of the class action. *In re Industrial Gas Litigation*, 100 F.R.D. 280 (N.D.Ill.1983). We recognize that numerous courts have certified classes of large numbers with small amounts of potential recovery.[26]

## CONCLUSIONS OF LAW

1. Petitioners have failed to establish a *prima facie* case that the named-Petitioners will fairly and adequately assert and protect the interests of the class and that their claims are typical of the class as required by Pa.R.C.P. Nos. 1702(3) and 1702(4).

2. Petitioners failed to comply with Pa.R.C.P. No. 1707, requiring them to move for class certification within 30 days after the pleadings closed.

**25.** Petitioners' counsel suggests that the county could issue one check for the full amount into escrow for disbursement, thus reducing the administrative expense. This is not acceptable to this Court, particularly, in view of the facts in this case.

**26.** *Bebchick v. Public Utilities Commission*, 318 F.2d 187 (D.C.Cir. 1963), *cert. denied* 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963); *Oakland Raiders v. Office of Emergency Preparedness*, 380 F.Supp. 187 (N.D.Cal.1974); *Appleton Electric Co. v. Advanced–United Expressways*, 494 F.2d 126 (7th Cir.1974); *Appleton Electric Co. v. Graves Truck Line, Inc.*, 635 F.2d 603 (7th Cir.1974), *cert. denied sub. nom. Graves Truck Line v. Appleton Electric Co.*, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981); *United States v. Pro Football, Inc.*, 514 F.2d 1396 (D.C.Cir.1975); *Sarafin v. Sears, Roebuck and Company, Inc.*, 73 F.R.D. 585 (N.D.Ill.1977); *Fetta v. Sears, Roebuck and Company, Incorporated*, 77 F.R.D. 411 (D.R.I.1977); *Fanucchi v. Coberly–West Co.*, 151 Cal.App.2d 72, 311 P.2d 33 (1957).

3. Petitioners inappropriately moved for summary judgment, without special order of court, although such relief is prohibited until the Court has ruled on the issue of class certification.

4. Petitioners' delays in meeting Court ordered deadlines demonstrate inadequacy of representation and failure to protect the interest of the class members.

5. Petitioners' delay in contacting the Estate's attorney demonstrates inadequacy of representation and failure to protect the interests of the class members.

6. Petitioners do not adequately represent the class since the contingent fee agreement each named-Petitioner entered into with their counsel states that they will *not* be ultimately responsible for costs of litigation if they lose.

7. Such fee agreement is contrary to the Code of Professional Responsibility which was in effect at the time the fee agreement was executed.

8. Petitioners' statement in their affidavits that they would be ultimately liable is inconsistent and contrary to statements in their contingent fee agreement.

9. The size of the class and the difficulties likely to be encountered in the management of the action as a class action override any possible recovery by the Petitioners.

10. The maximum amount of recovery of $3.55 is so small in view of the expenses of litigation and the effort of administrating the action as not to justify a class action.

11. Petitioners have failed to show that class action provides a fair and efficient method for adjudication, as required by Pa.R.C.P. No. 1702(5).

Accordingly, for the reasons set forth above, Petitioners' motion for class certification is hereby denied.

## ORDER

AND NOW, this 7th day of September, 1989, this Court hereby denies Petitioners' motion for class certification.