**Samuel-Bassett v. Kia Motors America Inc.**

*James A. Francis* and *Michael Donovan,* for plaintiff.

*Thomas Goutman* and *Joseph Kernen,* for defendant.

BERNSTEIN, *J.,* September 17, 2004—Plaintiff filed this action in January 2001 "on her own behalf and on behalf of all other persons similarly situated" for damages arising out of an allegedly defective brake system in the model year 2000 Kia Sephia automobile which she purchased from Bernicker Kia in Philadelphia, PA. Specifically, plaintiff alleges that her car suffers from a braking defect which causes it to shudder, vibrate, make grinding and groaning noises upon application of the brakes, and that it often is unable to stop. At least five attempts were made to repair Ms. Bassett's Sephia within the first 17,000 miles by replacing the brake rotors and pads, apparently without lasting success. Although plaintiff allegedly demanded timely rescission of her purchase of the vehicle from the defendant, her demand was refused.

By this action, Ms. Bassett seeks damages for the defendant's violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq., and breaches of implied and express warranties. She further seeks to represent a class consisting "of all residents of Pennsylvania who purchased and/or leased Kia Sephia automobiles for personal, family or household purposes within six years preceding the filing of the complaint in this action."

After a tortuous sojourn in the federal courts, the case has returned to the Court of Common Pleas of Philadelphia County where a record, consisting in large part of the federal court record, was created, and briefing, argument and hearing were expeditiously completed.

## DISCUSSION

The sole issue before this court is whether the prerequisites for certification as stated in Pa.R.C.P. 1702 are satisfied. The purpose behind class action suits is "to provide a means by which the claims of many individuals may be resolved at one time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method to seek compensation for claims that would otherwise be too small to litigate." *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 397, 676 A.2d 1237, 1239 (1996). For a suit to proceed as a class action, Rule 1702 of the Pennsylvania Rules of Civil Procedure requires that five criteria be met:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

Rule 1708 of the Pennsylvania Rules of Civil Procedure requires:

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small

in relation to the expense and effort of administering the action as not to justify a class action.

"(b) Where equitable or declaratory relief alone is sought, the court shall consider

"(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

"(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

"(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b)."

The burden of showing each of the elements in Rule 1702 is initially on the moving party. This burden "is not heavy and is thus consistent with the policy that 'decisions in favor of maintaining a class action should be liberally made.' " *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 45, 501 A.2d 635, 637 (1985). The moving party need only present evidence sufficient to make out a prima facie case "from which the court can conclude that the five class certification requirements are met." *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002) (quoting *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 130, 451 A.2d 451, 455 (1982)).

In other contexts, the prima facie burden has been construed to mean "some evidence," "a colorable claim," "substantial evidence," or evidence that creates a rebuttable presumption that requires the opponent to rebut demonstrated elements. In the criminal law context, "the

prima facie standard requires evidence of the existence of each and every element . . . ." *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa. Super. 1999), *alloc. denied,* 560 Pa. 722, 745 A.2d 1220 (1999). However, "the weight and credibility of the evidence are not factors at this stage . . . ." *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa. Super. 2001).

In the family law context, "the term 'prima facie right to custody' means only that the party has a colorable claim to custody of the child." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa. Super. 2000). Similarly, in the context of employment law, the Commonwealth Court has opined that a prima facie case can be established by "substantial evidence" requiring the opposing party to affirmatively rebut that evidence. See *e.g., Williamsburg Community School District v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 99 Pa. Commw. 206, 512 A.2d 1339 (1986).

Courts have consistently interpreted the phrase "substantial evidence" to mean "more than a mere scintilla," but evidence "which a reasonable mind might accept as adequate to support a conclusion." *SSEN Inc. v. Borough Council of the Borough of Eddystone,* 810 A.2d 200, 207 (Pa. Commw. 2002). In *Grakelow v. Nash,* 98 Pa. Super. 316 (1929), a tax case, the Superior Court said: "To ordain that a certain act or acts shall be prima facia evidence of a fact means merely that from proof of the act or acts, a rebuttable presumption of the fact shall be made; . . . it attributes a specified value to certain evidence but does not make it conclusive proof of the fact in question."

Class certification is a mixed question of fact and law. *Debbs v. Chrysler Corp.*, 810 A.2d 137, 154 (Pa. Super. 2002). The court must consider all the relevant testimony, depositions and other evidence pursuant to Rule 1707(c). In determining whether the prerequisites of Rule 1702 have been met, the court is only to decide who shall be the parties to the action and nothing more. The merits of the action and the plaintiffs' right to recover are excluded from consideration. 1977 Explanatory comment to Pa.R.C.P. 1707. Where evidence conflicts, doubt should be resolved in favor of class certification. In making a certification decision, "courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions, and judicial notice." *Janicik*, 305 Pa. Super. at 128, 451 A.2d at 454. Accordingly, this court must refrain from ruling on plaintiff's ultimate right to achieve any recovery, the credibility of the witnesses and the substantive merits of defenses raised.

"The burden of proof to establish the five prerequisites to class certification lies with the class proponent; however, since the hearing on class certification is akin to a preliminary hearing, it is not a heavy burden." *Professional Flooring Co. v. Bushar Corp.*, 61 D.&C.4th 147, 153 (Montg. Cty. 2003), citing *Debbs v. Chrysler Corp.*, 810 A.2d 137, 153 (Pa. Super. 2002); *Janicik v. Prudential Insurance Co. of America*, 305 Pa. Super. 120, 130, 451 A.2d 451, 455 (1982). See also, *Baldassari v. Suburban Cable TV Co. Inc.*, 808 A.2d 184, 189 (Pa. Super. 2002); *Cambanis v. Nationwide Insurance Co.*, 348 Pa. Super. 41, 501 A.2d 635 (1985). The prima facie burden of proof standard at the class certification stage is met by a qualitative "substantial evidence" test. How-

ever, where relevant defense evidence is presented, it is the plaintiff that has the burden of persuasion and plaintiff runs the risk of nonpersuasion.

Our Superior Court has instructed that it is a strong and oft-repeated policy of this Commonwealth that decisions applying the rules for class certification should be made liberally and in favor of maintaining a class action. *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 407, 615 A.2d 428, 431 (1992). See also, *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454, citing and quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ("in a doubtful case . . . any error should be committed in favor of allowing the class action").

Likewise, the Commonwealth Court has held that "in doubtful cases, any error should be committed in favor of allowing class certification." *Foust v. SEPTA,* 756 A.2d 112, 118 (Pa. Commw. 2000). This philosophy is further supported by the consideration that "[t]he court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied." *Janicik,* 305 Pa. Super. at 129, 451 A.2d at 454.

Within this context, the court will examine the requisite factors for class certification.

## I. *Numerosity*

To be eligible for certification, appellant must demonstrate that the class is "so numerous that joinder of all members is impracticable." Pa.R.C.P. 1702(1). A class is sufficiently numerous when "the number of potential individual plaintiffs would pose a grave imposition on

the resources of the court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually." *Temple University of the Commonwealth System of Higher Education v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (123 members sufficient); *ABC Sewer Cleaning Co. v. Bell of Pa.,* 293 Pa. Super. 219, 438 A.2d 616 (1981) (250 members sufficient); *Ablin Inc. v. Bell Telephone Company of Pennsylvania,* 291 Pa. Super. 40, 435 A.2d 208 (1981) (204 plaintiffs sufficiently numerous). Appellant need not plead or prove the actual number of class members, so long as he is able to "define the class with some precision" and provide "sufficient indicia [to the court] that more members exist than it would be practicable to join." *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 456.

In this case, the plaintiff's amended complaint avers that, "according to KMA's press releases, KMA sold over 166,000 Sephia automobiles in the United States of America for the years 1997, 1998 and 1999 alone." In her motion for class certification, Ms. Bassett cites to defendant's response to her interrogatory no. 8, which states that "for 1997-2000, the total number of Sephia automobiles sold or leased within the Commonwealth of Pennsylvania was 10,042." Joinder of 10,042 plaintiffs is impracticable, the numerosity requirement has been met.

## II. *Commonality*

Common questions are those which arise from a "common nucleus of operative facts." The second prerequi-

site for class certification is that "there are questions of law or fact common to the class." Pa.R.C.P. 1702(2). Common questions exist "if the class members' legal grievances arise out of the 'same practice or course of conduct' on the part of the class opponent." *Janicik, supra* at 133, 451 A.2d at 457. Thus, it is necessary to establish that "the facts surrounding each plaintiff's claim must be substantially the same so that proof as to one claimant would be proof as to all." *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). However, where the challenged conduct affects the potential class members in divergent ways, commonality may not exist. *Janicik, supra* at 133 n.5, 451 A.2d at 457 n.5.

"While the existence of individual questions is not necessarily fatal, it is essential that there be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding." *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 452, 500 A.2d 1137, 1142 (1985). In examining the commonality of the class' claims, a court should focus on the cause of injury and not the amount of alleged damages. "Once a common source of liability has been clearly identified, varying amounts of *damages* among the plaintiffs will not preclude class certification." See *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). (emphasis in original) Where there exists intervening and possibly superseding causes of damage, however, liability cannot be determined on a class-wide basis. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 231, 530 A.2d 499, 504 (1987).

Here, plaintiff argues that the potential class theory of liability is centered on a common grievance: that Kia knowingly sold one automobile model, the Sephia, with a uniformly defective braking system that affected all drivers, which Kia unsuccessfully attempted to remedy in a uniform manner. The amended complaint identifies the following common questions of law and fact:

(1) Whether defendant's Sephia automobiles possess the brake system defect alleged;

(2) Whether defendant lacks the means to repair the defect or replace the defective brake system;

(3) Whether defendant's conduct violates the Consumer Protection Law;

(4) Whether the brake system defect constitutes a breach of the implied warranty of merchantability and of express warranty;

(5) Whether defendant has violated and continues to violate the Magnuson-Moss Warranty Improvement Act;

(6) Whether members of the class are entitled to a declaration that defendant's conduct constitutes a violation of the CPL, a breach of implied and express warranty, and a violation of the Magnuson-Moss Warranty Improvement Act;

(7) Whether members of the class are entitled to be notified and warned about the brake system defect and are entitled to the entry of final injunctive relief compelling defendants to issue a notification and warning to all class members concerning such a defect;

(8) Whether members of the class are entitled to actual damages, representing (i) the failure of consideration

in connection with or difference in value arising out of the variance between defendant's automobiles as warranted and defendant's automobiles containing the brake system defect; (ii) the depression of resale value of the automobiles suffered by plaintiff and the class arising out of the brake system defect; (iii) sufficient funds to permit plaintiff and the class to themselves repair each affected automobile using proper parts and adequately trained labor; and (iv) compensation for all out-of-pocket monies expended by the plaintiff and the members of the class for repair attempts and loss of use of the vehicles.

There is sufficient record evidence that defendant knew that a vast number of its Sephia automobiles between 1997 and 2001 required replacement of brake pads and rotors at intervals of less than 5,000 miles. According to plaintiff's evidence, warranty repair statistics demonstrated for model year 1997 cars, 55 percent of all vehicles required brake warranty repair in the first year, and 40 percent in the second. Warranty statistics demonstrated that for model year 1998 cars, 85 percent of all vehicles required brake warranty repair in the first year, and 58 percent in the second. Warranty statistics demonstrated for model year 1999 cars, 70 percent of all vehicles required brake warranty repair in the first year, and "only" 33 percent in the second. Improvement was achieved in the 2000 year model but warranty statistics still demonstrated that 36 percent of all vehicles required brake warranty repair in the first year, and 15 percent in the second. This data clearly indicates a systemic brake problem, identified by plaintiff as related to a design defect causing inadequate heat dissipation from the front

brakes. Plaintiff's evidence is that the common expectation is that brake pad life is between 24,000 and 30,000 miles and that the Kia manual itself recommends the first scheduled brake pad inspection at 30,000 miles. In the class vehicles, 1997 to 2000, 60 percent had one or more warranty brake repair and in the 1998 vehicle a full 80 percent of vehicles had at least one warranty brake repair. In view of this evidence and given that Ms. Bassett need only show one common question of law or fact and need not prove her case at this juncture, she has satisfied the requirement of commonality with one notable exception.

### 3. UTPCPL

Plaintiff's claims under the UTPCPL fail to satisfy the commonality requirement. To recover under the UTPCPL, plaintiff must prove reliance. See *Skurnowicz v. Lucci,* 798 A.2d 788 (Pa. Super. 2002). A private UTPCPL plaintiff must show that he or she sustained injury as a result of a defendant's unlawful act. *Weinberg v. Sun Company Inc.,* 565 Pa. 612, 617, 777 A.2d 442, 446 (2001). Because reliance is an integral element of any UTPCPL claim, it is an inappropriate vehicle upon which to predicate a class action. In *Debbs v. Chrysler Corp.,* 810 A.2d 137, 156 (Pa. Super. 2002), the Superior Court has said:

"The UTPCPL was addressed by our Supreme Court in *Weinberg, supra.* There, the court held that a plaintiff bringing a private action under the UTPCPL must establish the common-law elements of reliance and causation with respect to all subsections of the UTPCPL. *Weinberg,* [565 Pa. at 617,] 777 A.2d at 446. Our Supreme Court

stated: 'the UTPCPL's underlying foundation is fraud prevention. Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common-law elements of reliance and causation.'

"Both fraud and UTPCPL claims were at issue in *Basile* [*v. H & R Block Inc.*, 729 A.2d 574 (Pa. Super. 1999)]. There, the plaintiffs brought a class action against H & R Block as well as Mellon Bank alleging that the defendants failed to disclose that tax refunds under H & R Block's 'Rapid Refund' program were actually short-term, high interest loans. *Basile*, 729 A.2d at 577. The plaintiffs alleged, inter alia, fraud and violations of the UTPCPL. *Id.* at 578.

"This court reasoned that, as to the UTPCPL claims, the plaintiffs must show detrimental reliance. The court noted that 'an action under the UTPCPL may not be amenable to class certification due to discrepancies in the respective levels of reliance displayed by individual class members' *Id.* at 584, citing *DiLucido,* [450 Pa. Super. at 401-402,] 676 A.2d at 1241. The court held that the plaintiffs need not show individualized detrimental reliance with respect to H & R Block, because H & R Block's fiduciary relationship with the plaintiffs established detrimental reliance as a matter of law. *Id.* On the other hand, Mellon Bank had no such fiduciary relationship with the plaintiffs. *Id.* at 585. Therefore, the court concluded that:

"[The plaintiffs] may not assert the reliance inherent in such a relationship to establish this requirement. Rather, because plaintiffs' claims against Mellon, unlike those against Block, assert conduct outside the confines of an

agency relationship, plaintiffs must establish reliance as a matter of fact on the basis of the testimony of individual class members. Because such a showing would vary between class members, plaintiffs' claims against Mellon are not appropriate for treatment as a class action.

"*Id.* at 585."

The court continued:

"As noted above, Rule 1702 requires, for class certification, that 'there are questions of law or fact common to the class.' When determining whether a class action is a fair and efficient means of litigating the dispute, 'one factor to consider is whether common questions of law or fact predominate over any question affecting only individual members.' Rule 1708(a)(1).

"Our Supreme Court's directions in *Klemow* [*v. Time Incorporated,* 466 Pa. 189, 352 A.2d 12 (1976)] and *Weinberg,* as well as our own court's directions in *Basile* and *DiLucido* guide us here. In order to prove both common-law fraud and a violation of the UTPCPL, the plaintiffs must show that they suffered harm as a result of detrimental reliance on Chrysler's fraudulent conduct. See *Klemow,* [466 Pa. at 197 n.17,] 352 A.2d at 16 [n.17] (cause of action for fraud includes a showing that the plaintiff acted in reliance on defendant's misrepresentations and, as such, is not generally appropriately resolved in a plaintiff class action); *Weinberg,* [565 Pa. at 617,] 777 A.2d at 446 (to sustain a private action under the UTPCPL, plaintiffs must show that they suffered 'an ascertainable loss as a result of the defendant's prohibited action'). This court has excused proof of individual detrimental reliance where the defendant has a fiduciary

relationship with the plaintiffs. *Basile,* 729 A.2d at 585. Because no fiduciary relationship has been demonstrated between the class and Chrysler to excuse proof of individualized reliance, the individual questions involving reliance and causation would remain a significant barrier to class certification." *Debbs v. Chrysler Corp.,* 810 A.2d 137, 157 (Pa. Super. 2002).

The Pennsylvania Supreme Court recently remarked that the causation requirement found in all private UTPCPL actions presented "questions of fact applicable to each individual private plaintiff [that] would be numerous and extensive." *Weinberg v. Sun Company Inc.,* 565 Pa. 612, 617, 777 A.2d 442, 446 (2001). (The same is true in this case. This cannot be established using class-wide proof.)

While one might question whether such a fundamental, dangerous and potentially life-threatening defect as one involving proper braking could be of such importance to any reasonable vehicle purchaser as to permit presumed class reliance, our appellate courts have clearly and uniformly defined the law as requiring individualized proof of reliance even under the "catch-all" clause of the UTPCPL unless there exists a "fiduciary" relationship between the parties. Accordingly, this one claim is not suitable for class treatment and certification is denied.

### III. *Typicality*

The third step in the certification test requires the plaintiff to show that the class action parties' claims and defenses are typical of the entire class. The purpose behind this requirement is to determine whether the class repre-

sentatives' overall position on the common issues is sufficiently aligned with that of the absent class members, to ensure that pursuit of their interests will advance those of the proposed class members. *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 404, 676 A.2d 1237, 1242 (1996).

Typicality is not identically and thus factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. In other words, typicality will generally be found to exist when the named plaintiffs and the proposed class members challenge the same unlawful conduct.

In this case, the plaintiff asserts that her claims are typical of the claims of the proposed class because, like all proposed class members, she purchased a defective Sephia without having received any warning or notification from the defendant of the braking defect, because the defendant's repeated efforts to repair the vehicle have not been successful and because the defendant has refused to repurchase the vehicle from her. Plaintiff's claims are typical in these respects. Ms. Bassett has satisfied this prerequisite and presents a typical claim aligned with all other class representatives.

## IV. *Adequacy of Representation*

For the class to be certified, this court must also conclude that the plaintiff "will fairly and adequately assert and protect the interests of the class." Pa.R.C.P. 1702(4). In determining whether the representative parties will

fairly and adequately represent the interests of the class, the court shall consider the following:

"(1) whether the attorney for the representative parties will adequately represent the interests of the class,

"(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

"(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed." Rule 1709.

"[U]ntil the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458. The court presumes that counsel is skilled in their profession. Throughout this litigation plaintiff's counsel has presented the issues and claims professionally and competently.

The plaintiff herself will adequately represent the interests of the proposed class despite the defendant's assertion to the contrary. Specifically, the defendant argues that plaintiff is inadequate because she has failed to raise a claim under the Pennsylvania Lemon Law; that her interests are antagonistic to those of the remainder of the proposed class because the brakes on her Sephia actually failed to stop her vehicle resulting in an accident in which she sustained personal injury and property damage on at least one occasion; and that an inspection of plaintiff's vehicle by the defendant's representatives revealed nothing.

In reviewing all evidentiary materials produced, we note that although the defendant's expert did not find anything wrong with the braking system in the plaintiff's

Sephia, there is ample evidence that plaintiff had the brake pads and rotors repaired and replaced more than twelve times by the time the odometer read 45,000 miles and four times by the 12,000-mile mark. Thus, while we do not doubt that the vehicle's brakes properly function with new pads and rotors and that the vehicle's brakes may have been fully operational when inspected by defendant's expert, the vehicle's repair history nevertheless strongly suggests that the brake pads and rotors could again wear out in an unusually short period of time due to an alleged defective design. Since this is the gravamen of the plaintiff's class complaint, the plaintiff's interests are sufficiently aligned with those of the proposed class to render her an adequate class representative.

Plaintiff's collision with another vehicle due to brake failure does not pit the plaintiff's individual interests against those of the class. Rather, this experience would likely make Ms. Bassett a more zealous advocate on behalf of the class which she seeks to represent since she has experienced the serious potential consequences of the brake design failure alleged. Plaintiff will function adequately as a representative of the proposed class despite her having had an accident.

Finally, section 12 of the Pennsylvania Lemon Law, 73 P.S. §1962 provides that "nothing in this Act shall limit the purchaser from pursuing any other rights or remedies under any other law, contract or warranty." Accordingly, Ms. Bassett's failure to plead a claim under the Lemon Law does not render her inadequate as a class representative.

"[C]ourts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have

relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458. There is no valid issue presented concerning the adequacy of the representative plaintiff or counsel.

## V. *Fair and Efficient Method of Adjudication*

The final criteria under Pa.R.C.P. 1702 is a determination of whether a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

### 1. Predominance of Common Questions of Law and Fact

The most important requirement in determining whether a class should be certified under 1702(a)(5) and 1708(a)(1) is whether common questions of law and fact predominate over any question affecting only individual members. In addition to the existence of common questions of law and fact, plaintiff must also establish that the common issues predominate. The analysis of predominance under Rule 1708(a)(1) is closely related to that of commonality under Rule 1702(2). *Janicik, supra* at 141, 451 A.2d at 461.

Predominance of common questions does not require a unanimity of common questions but rather demands that common questions outweigh individual questions. Herein, questions common to the class clearly predominate over those which only affect certain individual owners. Only one model is at issue in this case. The braking system is manufactured in such a way that the parts are fully inter-

changeable from one model year to the next. That the defendant attempted to correct the defect by numerous design changes is unavailing to rebut that common claims predominate because each change was ineffective.

While defendant is no doubt correct that each vehicle was driven differently by different drivers in different locations and that the vehicles manifested varying symptoms such as pulsating, grinding, vibration and failure to stop, there is nonetheless more than sufficient indicia that a vast number of those Sephias manufactured and sold between 1995 and 2001 experienced some or all of the above symptoms and were subject to the wear-out of their bake pads and rotors before reaching the 5,000-mile mark regardless of who was driving them or where or how they were being driven. There is no evidence to suggest that Kia drivers stop and go more than the drivers of any other vehicles. Moreover, there is further evidence that Kia was aware that there were ongoing problems with the Sephia's braking system by virtue of the parts sales history of the Sephia's brake pads and rotors, the technical service bulletins which it issued, its ongoing efforts to redesign and improve its brake pads and rotors and to manufacture them for installation on all model year vehicles, its brake coupon program and the relatively high buy-back rate which the company had for the vehicle. We thus conclude that the questions of whether the Sephia possesses the brake system defect alleged and whether defendant lacks the means to repair the defect or replace the defective brake system such as to render it liable for breach of express and implied warranties and under the Magnuson-Moss Warranty Improvement Act do predominate over those issues unique to the individual class members.

## 2. The Existence of Serious Management Difficulties

Under Pa.R.C.P 1708(2), the court must also consider the size of the class and the difficulties likely to be encountered in the management of the action as a class action. While a court must consider the potential difficulties in managing the class action, any such difficulties generally are not accorded much weight. Problems of administration alone ordinarily should not justify the denial of an otherwise appropriate class action, for to do so would contradict the policies underlying this device. *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972). Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring. *Id.* (citing *Buchanan v. Brentwood Federal Savings & Loan Assoc.,* 457 Pa. 135, 320 A.2d 117 (1974)). Except for some aspects of individual damage determinations, plaintiff's class claims a uniformly defective brake system design. This case presents no serious management difficulties.

Neither do potential differences in individual damage claims based upon individual experiences and costs associated with attempts to repair the vehicle pose any serious management difficulty. What this case does pose, if not certified, is the severe potential for inconsistent adjudications and the virtual impossibility of individual remedy.

## 3. Potential for Inconsistent Adjudications

Pennsylvania Rule 1708(a)(3) also requires a court to evaluate whether the prosecution of separate actions by

or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. In considering the separate effect of actions, the precedential effect of a decision is to be considered as well as the parties' circumstances and respective ability to pursue separate actions. *Janicik,* 305 Pa. Super. at 143, 415 A.2d at 462. Were the impossible task of 10,000 individual lawsuits to occur, the costs would overwhelm any recovery and the likelihood of at least some inconsistent verdicts is a real and present danger amounting to a virtual certainty. Class certification is appropriate under these criteria.

### 4. Extent and Nature of Any Pre-existing Litigation and the Appropriateness of This Forum

Under Pa.R.C.P. 1708(a)(4), (a)(5), and (a)(6), a court should consider the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues, the appropriateness of the chosen forum and whether the amounts recoverable justify a class action. Considering these factors, the court notes that it is a Pennsylvania class sought for certification and sees nothing inappropriate to the choice of Philadelphia as the jurisdiction for litigation. Philadelphia courts have a well-deserved reputation for effectively managing complex litigation to timely resolution.

Rule 1708 also requires the court to consider the amount of damages sought by the individual plaintiffs in determining the fairness and efficiency of a class action. Thus, a court must analyze whether, in view of the complexities of the issues or the expenses of litigation, the separate claims of individual class members are in-

sufficient in amount to support separate claims. Pa.R.C.P. 1708(a)(6). Alternatively, the rules require that the court analyze whether it is likely that the amounts which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action Pa.R.C.P. 1708(a)(7). This criterion is rarely used to disqualify an otherwise valid class action claim. See *Kelly v. County of Allegheny,* 519 Pa. 213, 215-16, 546 A.2d 608, 609 (1988) (Trial court erred in refusing to certify a class on the grounds that the class members' average claim was too small in comparison to the expenses incurred.). However, in *Klusman v. Bucks County Court of Common Pleas,* 128 Pa. Commw. 616, 631, 564 A.2d 526, 534 (1989), the court said: "Where the issue of damages does not lend itself to a mechanical calculation, but requires separate mini-trials of a large number of individual claims, courts have found that the staggering problem of logistics make the damage aspect of the case predominate and renders the class unmanageable as a class action. *State of Alabama v. Blue Bird Body Co. Inc.,* 573 F.2d 309 (5th Cir. 1978)."

"To verify that each of the 108,107 claims suffered actual damages would present an administrative nightmare because of the overwhelming number of transactions between parties that would be required to be examined. *Mekani v. Miller Brewing Co.,* 93 F.R.D. 506 (E.D. Mich. 1982). . . . This evaluation of the question of manageability, though ultimately involved with the merits, must be examined in order to determine the efficiency of the class action. *In re Industrial Gas Litigation,* 100 F.R.D. 280 (N.D. Ill. 1983)." Numerous courts have cer-

tified classes of large numbers with small amounts of potential recovery. The damages alleged herein, much of which can be ascertained on a model year basis, do not present any such problems and can readily be ascertained and managed.

### 5. The Separate Claims of the Individual Plaintiffs Are Insufficient in Amount to Support Separate Claims or Their Likely Recovery

Rule 1708 also requires the court to consider the amount of damages sought by the individual plaintiffs in determining the fairness and efficiency of a class action. Thus, a court must analyze whether, in view of the complexities of the issues or the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate claims. Pa.R.C.P. 1708(a)(6). Alternatively, the rules ask the court to analyze whether it is likely that the amounts which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action. Pa.R.C.P. 1708(a)(7). This criterion is rarely used to disqualify an otherwise valid class action claim. See *Kelly v. County of Allegheny,* 519 Pa. 213, 215-16, 546 A.2d 608, 609 (1988) (Trial court erred in refusing to certify a class on the grounds that the class members' average claim was too small in comparison to the expenses incurred.). However, in *Klusman v. Bucks County Court of Common Pleas,* 128 Pa. Commw. 616, 631, 564 A.2d 526, 534 (1989) the court refused to certify a class whose average recovery would have been $3.55. The Commonwealth Court said: "Where the issue of damages does not lend

itself to a mechanical calculation, but requires separate mini-trials of a large number of individual claims, courts have found that the staggering problem of logistics make the damage aspect of the case predominate and renders the class unmanageable as a class action. *State of Alabama v. Blue Bird Body Co. Inc.,* 573 F.2d 309 (5th Cir. 1978)."

"To verify that each of the 108,107 claims suffered actual damages, would present an administrative nightmare because of the overwhelming number of transactions between parties that would be required to be examined. *Mekani v. Miller Brewing Co.,* 93 F.R.D. 506 (E.D. Mich. 1982). Petitioners argue these determinations go to the merits. This evaluation of the question of manageability, though ultimately involved with the merits, must be examined in order to determine the efficiency of the class action. *In re Industrial Gas Litigation,* 100 F.R.D. 280 (N.D. Ill. 1983). We recognize that numerous courts have certified classes of large numbers with small amounts of potential recovery." The damages herein are ascertainable, not de minimis and quite capable of determination. No problems exist herein for certification.

6. Appropriateness of Equitable or Declaratory Relief

Since plaintiffs seek injunctive relief, it is necessary to consider the criteria set forth in Pa.R.C.P. 1708(b). Under Pa.R.C.P. 1708(b)(2), where equitable relief is sought, a court should consider whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class. In her amended complaint and proofs, plain-

tiff claims a uniform defect, and a failure to remedy, warn, or appropriately compensate which may make injunctive relief appropriate under this rule.

Having weighed the Rule 1702 requirements, this court finds that a class action is a fair and efficient method for adjudicating plaintiff's claim. Accordingly, this court makes the following conclusions of law.

## CONCLUSIONS OF LAW

(1) The class is sufficiently numerous that joinder of all its members would be impracticable.

(2) There are questions of law and fact common to the class.

(3) Individual questions of fact exist as it pertains to class claims for violation of the UTPCPL.

(4) The claims raised by plaintiff are typical of those claims belonging to absent class members.

(5) Plaintiff will fairly and adequately assert and protect the interests of the class.

(6) Allowing this case to proceed as a class action provides a fair and efficient method for adjudication of the criteria set forth in Pa.R.C.P. 1708.

## CONCLUSION

For these reasons, this court grants in part and denies in part plaintiff's motion for class certification in accordance with the order issued herewith:

(1) A class is herby certified as to Count II, III and IV of the amended complaint and defined as follows:

"All residents of the Commonwealth of Pennsylvania who purchased and/or leased model year 1995-2001 Kia

Sephia automobiles for personal, family or household purposes for a period of six years preceding the filing of the complaint in this action."

(2) Plaintiff Shamell Samuel-Bassett is designated class representative.

(3) Plaintiff's counsel are appointed as counsel for the class.

(4) The parties shall submit proposals for a notification procedure and proposed form of notice to class members within 20 days from the date of this order. Discovery for trial, if necessary, shall commence.

## ORDER

And now, September 17, 2004, upon consideration of plaintiff's motion for class certification, all responses in opposition, the respective memoranda, all matters of record, and in accordance with the contemporaneous memorandum opinion, it is hereby ordered and decreed as follows:

(1) Plaintiff's motion for class certification is granted in part, denied in part.

(2) A class is hereby certified as to Count II, III and IV of the amended complaint and defined as follows:

"All residents of the Commonwealth of Pennsylvania who purchased and/or leased model year 1995-2001 Kia Sephia automobiles for personal, family or household purposes for a period of six years preceding the filing of the complaint in this action."

(3) Plaintiff Shamell Samuel-Bassett is designated class representative.

(4) Plaintiff's counsel are appointed as counsel for the class.

(5) The party shall submit proposals for a notification procedure and proposed form of notice to class members within 20 days from the date of this order. Discovery for trial, if necessary, shall commence.