## Board v. SEPTA

302

*Michael D. Donovan* and *David A. Searles,* for plaintiffs.

*Michael A. Hamilton* and *Paul W. Hanley,* for defendant.

BERNSTEIN, *J.,* July 18, 2010—This is a class action for damages and equitable relief brought on behalf of Pennsylvania claimants against SEPTA, a municipal transportation authority, for improper payment of PIP benefits in connection with medical claims by persons injured in accidents while on SEPTA vehicles. At issue is whether 75 Pa.C.S. §1797 of the Pennsylvania Motor Vehicle Financial Responsibility Law applies to SEPTA, a self-insurer.

On December 16, 2002, while passengers on SEPTA, plaintiffs suffered physical injuries as a result of a collision. Plaintiffs were provided medical services by medical providers who submitted the bills to SEPTA for payment. SEPTA paid certain amounts to plaintiffs' medical providers. With regard to plaintiff Houston, the medical providers submitted bills for $3,435, $225, $1,155 and $2,049 totaling $6,864. SEPTA paid the bills for $3,435, $225, $1,155 in full and subsequently paid $185 towards the $2,049 bill. The payments amounted to a total of $5,000. With regard to plaintiff Board, the medical providers submitted bills for $225, $2,505, and $3,070 to SEPTA for a total of $5,800.00. SEPTA paid the bills for $225 and $2,505 in full and paid $2,270 toward the $3,070 for payments totaling $5,000. None of the payments made reflect the 110 percent Medicare reduction provided for in section 1797(a) of the MVFRL.

On July 21, 2004, plaintiffs instituted suit against SEPTA alleging violations of the MVFRL and the UT-

PCPL. Plaintiffs allege that SEPTA was required to pay plaintiffs' medical expenses at 110 percent of the allowances as required under 75 Pa.C.S. §1797(a) of the MVFRL. Plaintiffs claim that this would result in a higher percentage of the total medical bills being paid by their PIP coverage. SEPTA filed preliminary objections which were overruled by the court. On March 30, 2005, SEPTA filed a motion for judgment on the pleadings which was denied by the court. On December 5, 2005, the court certified the order denying the motion for judgment on the pleadings for interlocutory appeal and SEPTA filed its appeal with the Commonwealth Court. The court stayed all proceedings pending a decision on SEPTA's interlocutory appeal. On January 12, 2006, the appeal was dismissed pursuant to Pa.R.C.P. 1311 for failure to timely appeal. On February 13, 2006, SEPTA filed a petition for allowance of appeal with the Supreme Court which was denied on February 7, 2008.

Plaintiffs have now filed a motion for issue only class certification pursuant to Pa.R.C.P. 1708 and 1710(c) (1) and a motion for partial summary judgment seeking declaratory relief and injunctive relief.

## DISCUSSION

### I. *Plaintiffs' Motion for Class Certification Is Granted*

The purpose behind class action suits is "to provide a means by which the claims of many individuals could be resolved at one time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method to seek compensation for claims that

would otherwise be too small to litigate."[1] For a suit to proceed as a class action, Rule 1702 of the Pennsylvania Rules of Civil Procedure requires that five criteria be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1704; (5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Rule 1708 of Pennsylvania Rules of Civil Procedure provides that in determining whether a class action is a fair and efficient method of adjudicating a controversy, the court is to consider, among other matters, the following criteria:

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

---

1. *DiLucido v. Terminix International Inc.*, 450 Pa. Super. 393, 397, 676 A.2d 1237, 1239 (1996).

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

"(b) Where equitable or declaratory relief alone is sought, the court shall consider

"(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

"(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

"(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b)."

The burden of showing each of the elements in Rule 1702 is initially on the moving party. This burden "is not heavy and is thus consistent with the policy that decisions in favor of maintaining a class action should be liberally made."[2] The moving party need only present evidence sufficient to make out a prima facie case "from which the court can conclude that the five class certification requirements are met."[3]

In other contexts, the prima facie burden has been construed to mean "some evidence," "a colorable claim," "substantial evidence," or evidence that creates a rebuttable presumption that requires the opponent to rebut demonstrated elements. In the criminal law context, "the prima facie standard requires evidence of the existence of each and every element."[4] However, "the weight and credibility of the evidence are not factors at this stage."[5]

In the family law context, the term " 'prima facie right to custody' means only that the party has a colorable claim to custody of the child."[6] Similarly, in the context

---

2. *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 45, 501 A.2d 635, 637(1985).

3. *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002) quoting *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super 120, 128, 451 A.2d 451, 455 (1982)).

4. *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa. Super 1999), *alloc. denied,* 560 Pa. 722, 745 A.2d 1220 (1999).

5. *Commonwealth v. Martin,* 779 A.2d 1177, 1180 (Pa. Super. 2001).

6. *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa. Super. 2000).

of employment law, the Commonwealth Court has opined that a prima facie case can be established by "substantial evidence" requiring the opposing party to affirmatively rebut that evidence.[7] Courts have consistently interpreted the phrase "substantial evidence" to mean "more than a mere scintilla," but evidence "which a reasonable mind might accept as adequate to support a conclusion."[8] In *Grakelow v. Nash,* 98 Pa. Super. 316 (1929), a tax case, the Superior Court said: "To ordain that a certain act or acts shall be prima facie evidence of a fact means merely that from proof of the act or acts, a rebuttable presumption of the fact shall be made; . . . it attributes a specified value to certain evidence but does not make it conclusive proof of the fact in question."

Class certification is a mixed question of fact and law.[9] The court must consider all the relevant testimony, depositions and other evidence pursuant to Rule 1707(c). In determining whether the prerequisites of Rule 1702 have been met, the court is only to decide who shall be the parties to the action and nothing more. The merits of the action and the plaintiffs' right to recover are excluded from consideration.[10] Where evidence conflicts, doubt should be resolved in favor of class certification. In making a certification decision, "courts in class certification proceedings regularly and properly employ

7. See *e.g., Williamsburg Community School District v. Commonwealth Pennsylvania Human Rights Commission,* 99 Pa. Commw. 206, 512 A.2d 1339 (1986).

8. *SSEN Inc., v. Borough Council of Borough of Eddystone,* 810 A.2d 200, 207 (Pa. Commw. 2002).

9. *Debbs v. Chrysler Corp.,* 810 A.2d 137 (Pa. Super. 2002).

10. 1977 Explanatory comment to Pa.R.C.P. 1707.

reasonable inferences, presumptions, and judicial notice."[11] Accordingly, this court must refrain from ruling on plaintiff's ultimate right to any recovery, the credibility of the witnesses and the substantive merits of defenses raised.

"The burden of proof to establish the five prerequisites to class certification lies with the class proponent; however, since the hearing on class certification is akin to a preliminary hearing, it is not a heavy burden."[12] The prima facie burden of proof standard at the class certification stage is met by a qualitative "substantial evidence" test. Our Superior Court has instructed that it is a strong and oft-repeated policy of this Commonwealth that decisions applying the rules for class certification should be made liberally and in favor of maintaining a class action."[13]

Likewise, the Commonwealth Court has held that "in doubtful cases, any error should be committed in favor of allowing class certification."[14] This philosophy is

---

11. *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 128, 451 A.2d 451, 455 (1982).

12. *Professional Flooring Co. v. Bushar Corp,* 61 D.&C.4th 147, 153, (Montg. Cty. 2003) (citing *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002); *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 128, 451 A.2d 451, 455 (1982)); see also, *Baldassari v. Suburban Cable TV Co. Inc.,* 808 A.2d 184, 189 (Pa. Super. 2002); *Cambanis v. Nationwide Insurance Company,* 348 Pa. Super. 41, 501 A.2d 635 (1985).

13. *Weismer by Weismer v. Beech-Nut Nutrition Corporation,* 419 Pa. Super. 403, 407, 615 A.2d 428, 431 (1992). See also, *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454, citing and quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ("in a doubtful case . . . any error should be committed in favor of allowing the class action").

14. *Foust v. SEPTA,* 756 A.2d 112, 118 (Pa. Commw. 2000).

further supported by the consideration that "the court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied." [15]

Within this context, the court will examine the requisite factors for class certification.

## A. Numerosity

To be eligible for certification, plaintiffs must demonstrate that the class is "so numerous that joinder of all members is impracticable." [16] A class is sufficiently numerous when "the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should plaintiffs sue individually." [17] Plaintiffs need not plead or prove the actual number of class members, so long as they are able to "define the class with some precision" and provide "sufficient indicia [to the court] that more members exist than it would be practicable to join." [18]

Here, the class consists of 7,000 claimants for whom PIP files were established by SEPTA during the relevant time period. Defendant does not contest numerosity. As

15. *Janicik,* 305 Pa. Super. at 129, 451 A.2d at 454.

16. Pa.R.C.P. 1702(1).

17. *Temple University v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (123 members sufficient); *ABC Sewer Cleaning Company v. Bell of Pennsylvania,* 293 Pa. Super. 219, 438 A.2d 616 (1981) (250 members sufficient); *Ablin Inc. v. Bell Telephone Company of Pennsylvania,* 291 Pa. Super. 40, 435 A.2d 208 (1981) (204 plaintiffs sufficiently numerous).

18. *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 456.

such, plaintiffs have satisfied the numerosity requirement for class certification of all proposed classes.

## B. Commonality

The second prerequisite for class certification is that "there are questions of law or fact common to the class."[19] Common questions exist "if the class members' legal grievances arise out of the 'same practice or course of conduct on the part of the class opponent.'"[20] Thus, it is necessary to establish that "the facts surrounding each plaintiff's claim must be substantially the same so that proof as to one claimant would be proof as to all."[21] However, where the challenged conduct affects the potential class members in divergent ways, commonality may not exist.[22] "While the existence of individual questions is not necessarily fatal, it is essential that there be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding."[23] In examining the commonality of the class' claims, a court should focus on the cause of injury and not the amount of alleged damages. "Once a common source of liability has been clearly identified, varying amounts of damages among the plaintiffs will not preclude class certification."[24] Where there exists interven-

19. Pa.R.C.P. 1702(2).

20. *Janicik, supra* at 133, 451 A.2d at 457.

21. *Weismer by Weismer v. Beech-Nut Nutrition Corporation,* 419 Pa. Super. 403, 615 A.2d 428 (1992).

22. *Janicik, supra* 133 n.5, 451 A.2d at 457 n.5.

23. *D'Amelio v. Blue Cross of Lehigh Valley,* 414 Pa. Super. 310, 606 A.2d 1215 (1992).

24. See *Weismer by Weismer v. Beech-Nut Nutrition Corporation,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992).

ing and possibly superseding causes of damage however, liability cannot be determined on a class-wide basis.[25]

After reviewing the record created, the court finds that the claims presented by the class do satisfy the commonality requirement of Rule 1702(a)(2). The common issue is the applicability of section 1797(a) of the MVFRL to self-insurers such as SEPTA, the nature of financial losses suffered by class members and whether SEPTA has become unjustly enriched by not paying benefits and whether SEPTA has become unjustly enriched by not paying benefits as required by the MVFRL. Plaintiffs have sustained their burden of demonstrating that common issues of fact and law exist to satisfy the requirement of commonality.

## C. Typicality

The third step in the certification test requires the plaintiff to show that the class action claims and defenses are typical of the entire class. The purpose behind this requirement is to determine whether the class representatives' overall position on the common issues is sufficiently aligned with that of the absent class members, to ensure that pursuit of their interests will advance those of the proposed class members.[26]

The named plaintiffs here are typical of those class claimants. The named plaintiffs suffered monetary loss

---

25. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 233-34, 530 A.2d 499, 504 (1987).

26. *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 404, 676 A.2d 1237, 1242 (1996).

upon the exhaustion of the $5,000 limit by SEPTA. The fact that different class members may have different damage claims does not defeat the typicality of the class representative. The requirement of typicality has been met.

## D. Adequacy of Representation

For the class to be certified, this court must also conclude that the plaintiffs "will fairly and adequately assert and protect the interests of the class."[27] In determining whether the representative parties will fairly and adequately represent the interests of the class, the court shall consider the following: "(1) whether the attorney for the representative parties will adequately represent the interests of the class, (2) whether the representative parties have a conflict of interest in the maintenance of the class action, and (3) whether the representative parties have or can acquire financial resources to assure that the interests of the class will not be harmed."[28]

"Until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession."[29] Here, defendants do not challenge plaintiffs' counsels' skill and therefore, the court presumes that counsel is skilled in their profession. "Courts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have relied upon the adversary system and the court's supervisory powers to expose and miti-

---

27. Pa.R.C.P. 1702(4).

28. Pa.R.C.P. 1709.

29. *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458.

gate any conflict."[30] Defendants argue that the interests of the named plaintiffs conflict with the interests of other class members. This court concludes that the named class representatives' interests do not conflict with those of the proposed putative class even though some class members may have additional monetary claims. Accordingly, the court finds that no conflict of interest exists and the adequacy of representation has been demonstrated,

## E. Fair and Efficient Method of Adjudication

The final criteria under Pa.R.C.P. 1702 is a determination of whether a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708. Since the court has determined that the claims satisfy the requirements of Pa.R.C.P. 1702 and since equitable relief is requested, it is necessary to consider both subdivisions (a) and (b) of Rule 1708.[31]

### 1. Predominance of common questions of law and fact

The most important requirement in determining whether a class should be certified under 1702(a)(5) and 1708(a)(1) is whether common questions of law and fact predominate over any question affecting only individual members. In addition to the existence of common questions of law and fact, plaintiffs must also establish that the common issues predominate. The analysis of predominance under Rule 1708(a)(1) is closely related

---

30. *Janicik,* 305 Pa. Super. at 136-37, 451 A.2d at 458.
31. Pa.R.C.P. 1708(c).

to that of commonality under Rule 1702(2).[32] The court adopts and incorporates its analysis of commonality and concludes that the requirement of predominance has been satisfied.

### 2. *The existence of serious management difficulties*

Under Pa.R.C.P. 1708(2), a court must also consider the size of the class and the difficulties likely to be encountered in the management of the action as a class action. While a court must consider the potential difficulties in managing the class action, any such difficulties generally are not accorded much weight. Problems of administration alone ordinarily should not justify the denial of an otherwise appropriate class action for to do so would contradict the policies underlying this device.[33] Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring.[34] The court sees no serious management difficulties in the trial of this case. Whatever management problems remain, this court will rely upon the ingenuity and aid of counsel and upon the court's plenary authority to control the action.[35]

### 3. *Potential for inconsistent adjudications*

Pennsylvania Rule 1708(a)(3) also requires a court to evaluate whether the prosecution of separate actions by

---

32. *Janicik, supra* at 141, 451 A.2d at 461.

33. *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972).

34. *Id.* (citing *Buchanan v. Brentwood Federal Savings and Loan Assoc.,* 457 Pa. 135, 160, 320 A.2d 117, 131 (1974)),

35. *Janicik,* 305 Pa. Super. at 142, 451 A 2d 462.

or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. In considering the separate effect of actions, the precedential effect of a decision is to be considered as well as the parties' circumstances and respective ability to pursue separate actions. While there is significant risk of inconsistent adjudications if tried separately, because of the straightforward nature of the issues and facts involved, as a single certified class one case will determine liability and one verdict will establish all obligations. Any possibillity for inconsistent verdicts is eliminated by certification.

### 4. *Extent and nature of any preexisting litigation and the appropriateness of this forum*

Under Pa.R.C.P. 1708(a)(4) and (a)(5), a court should consider the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues. The court is aware of no litigation which would conflict with this case. This court finds that this forum is appropriate to litigate the class claims. This court has a demonstrated record of excellence in managing complex litigation and class action litigation.

### 5. *The separate claims of the individual plaintiffs are insufficient in amount to support separate claims or their likely recovery*

Rule 1708 also requires the court to consider the amount of damages sought by the individual plaintiffs in determining the fairness and efficiency of a class ac-

tion. Thus, a court must analyze whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions.[36] Alternatively, the rules ask the court to analyze whether it is likely that the amounts which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.[37] This criterion is rarely used to disqualify an otherwise valid class action claim.[38] However, in *Klusman v. Bucks County Court of Common Pleas,* 128 Pa. Commw. 616, 631, 564 A.2d 526, 534 (1989) the court said: "Where the issue of damages does not lend itself to a mechanical calculation, but requires separate mini-trials of a large number of individual claims, courts have found that the staggering problem of logistics make the damage aspect of the case predominate and renders the class unmanageable as a class action."

Herein, the individual claims of the individual plaintiffs are insufficient in amount to support separate claims or their likely recovery, but sufficient to warrant class action status. The Pennsylvania rules for class certification "manifest a particular sensitivity to providing a procedure for persons with small claims to obtain judicial relief through the use of a class action." Thus, Pa.R.C.P. 1708(a)(6) and (7) have been satisfied.

---

36. Pa.R.C.P. 1708(a)(6).

37. Pa.R.C.P. 1708(a)(7).

38. See *Kelly v. County of Allegheny,* 519 Pa. 213, 215, 546 A.2d 608, 609 (1988) (Trial court erred in refusing to certify a class on the grounds that the class members' average claim was too small in comparison to the expenses incurred.).

### 6. *Final and equitable relief is appropriate for the class since SEPTA has acted and refused to act on grounds that are applicable to the class*

Under Pa.R.C.P. 1708(b)(2), where equitable relief is sought, a court should consider whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class. SEPTA admits that it does not comply with the payment provisions of section 1797. SEPTA's practice of not complying with section 1797 affects thousand of class members that have been and will continue to be affected by this policy. Since plaintiffs seek equitable relief in the form of an order declaring and compelling SEPTA to conform to section 1797 and require cost reduction under section 1797, class action treatment is appropriate.

### II. *SEPTA Is Subject to the Cost Reduction Provisions of Section 1797(a)*

SEPTA, a regional transportation authority created by an act of the General Assembly, is a self-insurer. It does not issue policies or collect premiums as would an insurance company. However, in accordance with section 1711(a) of the MVFRL, SEPTA does provide medical coverage in the amount of $5,000 for passengers in its vehicles which are registered under the MVFRL.[39]

---

39. Section 1711 (a) provides in part as follows:
"Required benefits
"(a) Medical Benefit—An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, except recreational vehicles not intended for highway use, motorcycles, motor-driven cycles or motorized

SEPTA contends however, that although it provides medical coverage it is exempt from the cost reduction provision of section 1797(a) because it is a self insurer and not an insurer. Plaintiffs on the other hand contend that the cost reduction provision of section 1797(a) applies. The issue raised strictly and solely presents a matter of statutory construction and is appropriate for ruling on a partial summary judgment motion.

Under the Statutory Construction Act of 1972,[40] it is fundamental that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,]" and that "[e]very statute shall be construed, if possible, to give effect to all its provisions. In this regard, the Act instructs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirits." When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations.[41]

The Act provides that "[w]ords and phrases shall be construed according to the rules of grammar and accord-

---

pedalcycles or like type vehicles, registered and operated in this Commonwealth, shall include coverage providing a medical benefit in the amount of $5,000.

40. 1 Pa.C.S. §1501 et seq.

41. 1 Pa.C.S. §1921(a-c).

ing to their common and approved usage"; and that "technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning or definition." Further, if the General Assembly defines words that are used in a statute, those definitions are binding. The Act allows a court to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. Moreover, the Act sets forth rules for a court to follow when provisions in or among statutes are in conflict and cannot be reconciled.[42]

A self-insurer is defined in 75 Pa.C.S. §1702 as an entity providing benefits and qualified in the manner set forth in section 1787. Section 1787(a) provides as follows:

"Self insurance.

"(a) General rule—Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist such as will satisfy the department that the self-insurer will:

"(1) Provide the benefits required by section 1711 (relating to required benefits), *subject to the provisions of subchapter B* (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to avail-

---

42. *Pennsylvania Associated Builders and Contractors Inc. v. Commonwealth Department of General Servcies,* 593 Pa. 580, 591, 932 A.2d 1271, 1274 (2007).

ability of benefits) and 1715 (relating to availability of available limits).

"(2) Make payments sufficient to satisfy judgments as required by section 1775 (relating payments sufficient to satisfy judgments).

"(3) Provide uninsured motorist coverage up to the limits set forth in section 1774." (emphasis added)

Thus, as a self-insurer, SEPTA is required and in fact does provide first-party medical benefits to individuals injured in a motor vehicle accident involving a SEPTA vehicle as required by section 1711(a).[43] Section 1787 specifically states that although SEPTA is required to provide first-party medical benefits to individuals injured in a motor vehicle accident it is to do so "subject to the provisions of subchapter B" and without the additional benefits and limits provided in sections 1712 relating to availability of benefits and 1715 relating to availability of available limits. Section 1712 is set forth in subchapter B of the Act and provides as follows:

"An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, except recreational vehicles not intended for highway use, motorcycles . . . shall make available for purchase first-party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows: (1) Medical Benefits—*Subject to the limitations of section 1797 (relating to customary charges for treatment),* coverage to provide for reasonable and necessary medical treatment and rehabilitative services, including, but not limited to, hospital,

---

43. See 75 Pa.C.S. §1787(a); see also, *Kleinberg v. SEPTA,* 765 A.2d 405 (Pa. Commw. 2000).

dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, licensed physical therapy, nursing services, vocational rehabilitation and occupational therapy, speech pathology and audiology, optometric services, medications, medical supplies and prosthetic devices, all without limitation as to time, provided that, within 18 months from the date of the accident causing injury, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury. Benefits under this paragraph may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing. (2) Income Loss Benefit—Includes the following:

"(i) Eighty percent of actual loss of gross income.

"(ii) Reasonable expenses actually incurred for hiring a substitute to perform self-employment services thereby mitigating loss of gross income or for hiring special help thereby enabling a person to work and mitigate loss of gross income.

"Income loss does not include loss of expected income for any period following the death of an individual or expenses incurred for services performed following the death of an individual. Income loss shall not commence until five working days have been lost after the date of the accident. (3) Accidental Death Benefit—A death benefit paid to the personal representative of the insured, should injury resulting from a motor vehicle accident cause death within 24 months from the date of the accident. (4) Funeral Benefit—Expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of a deceased individual, incurred as a result of the death of the individual as a result of the

accident and within 24 months from the date of the accident. (5) Combination Benefit—A combination of benefits described in paragraphs (1) through (4) as an alternative to the separate purchase of those benefits (6) Extraordinary Medical Benefits—Medical benefits, as defined in paragraph (1), which exceed $100,000."

Although section 1712 provides for different categories of benefits to be made available by insurers, self-insurers are only required to provide medical benefits.[44] Since self-insurers are required to provide medical benefits, self-insurers are subject to section 1797 which requires the reduction of medical benefits paid to providers as set forth in sections 1712 (1) and 1797. Specifically section 1797 provides:

"A person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first-party medical benefits, including extraordinary medical benefits, for a motor vehicle described in subchapter B (relating to motor vehicle liability insurance first-party benefits) shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110 percent of the prevailing charge at the 75th percentile; 110 percent of the applicable fee schedule, the recommendation fee or the inflation index charge; or 110 percent of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary

---

44. See sections 1711(a), 1712(1) and 1787.

charge, whichever is less. The General Assembly finds that the Medicare program is an appropriate basis to calculate payment for treatments, accommodations, products or services for injuries covered by liability or uninsured and underinsured benefits or first-party medical benefits insurance . . . ." (emphasis added)

The MVFRL was enacted as a means of insurance reform primarily to reduce the escalating costs of purchasing motor vehicle insurance in our Commonwealth. An equally important underlying objective of the MVFRL is to provide broad coverage to assure proper medical care to the injured in motor vehicle accidents. Thus, the MVFRL is to be construed liberally to afford the greatest possible coverage to injured claimants.[45] With these principles in mind the court holds that SEPTA is required to reduce the medical payments to providers pursuant to section 1797 of the Act.[46] Effectuating the legislative intent embodied in section 1797 requires that SEPTA like all other operators of motor vehicles in the Commonwealth is employing cost containment in all aspects of medical services payments to claimants as a result of injuries sustained in motor vehicle accidents.[47] By reducing the medical payments to providers of medical and rehabilitative services, the legislative intent of section 1797 is fulfilled.

---

45. *Danko v. Erie Insurance Exchange,* 428 Pa. Super. 223, 229, 630 A.2d 1219, 1222 (1993).

46. See *In re SEPTA MVFRL Interest Litigation,* 2010 Pa. Commw. Lexis 270 (Pa. Commw. 2010) (self-insurer SEPTA is subject to the interest provisions of the MVFRL.).

47. *Pittsburgh Neurosurgery Associates Inc. v. Danner,* 733 A.2d 1279 (Pa. Super. 1999).

## CONCLUSION

Plaintiffs' petition for class certification is granted. Plaintiffs' petition for summary judgment seeking declaratory and injunctive relief is granted and defendant's cross motion for summary judgment is denied.

## ORDER

And now, June 18, 2010, upon consideration of plaintiffs' motion for limited class certification, declaratory judgment and partial summary judgment and defendant's cross motion for summary judgment, all responses in opposition, and in accord with the attached opinion, it hereby is ordered as follows:

(1) Plaintiffs' motion for limited class certification is granted. A class is hereby certified and defined as follows: "all persons as to whom SEPTA has not paid or will not pay personal injury protection benefits in accordance with 75 Pa.C.S. §1797(a) of the Motor Vehicle Financial Responsibility Law, during the period beginning July 2000 and continuing through the date of final appellate review." Plaintiffs Louise Board and Claudette Houston are certified as class representatives. Michael D. Donovan of Donovan Searles LLC and Kevin P. Kelly of Kelly & Herron P.C. shall serve as co-lead counsel.

(2) Plaintiffs' motion for partial summary judgment as to the claim for declaratory relief is granted and the court declares that SEPTA is required to comply with the mandates of section 1797 of the Motor Vehicle Financial Responsibility Law.

(3) Plaintiff's motion for injunctive relief is granted and SEPTA is required to comply with the mandates of section 1797 of the Motor Vehicle Financial Responsibility Law.

It is further ordered that defendant's cross motion for summary judgment is denied.